UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|                                                              |
| ------------------------------------------------------------ |
|                                                              |
| ALAINA M. ZANKE-JODWAY and                                   |
| TIMOTHY M. JODWAY,                                           |
|                                                              |
|          Plaintiffs,                                         |
|                                                              |
|                     v.                                       |
|                                                              |
| CAPITAL CONSULTANTS, INC., a Michigan Corp.,                 |
| LAWRENCE FOX, an individual,                                 |
| JAMES E. HIRSCHENBERGER, an individual,[1]                   |
|                                                              |
| BEN SACKRIDER, an individual,                                |
| PHILLIP VAN DERMUS , an individual,                          |

Case No. 1:08-cv-930

HONORABLE PAUL L. MALONEY

---

[1]

In October 2009, the court granted in part and denied in part the Capital Defendants' motion to dismiss or for summary judgment. The decision eliminated one of the plaintiffs' seven claims against the Capital defendants. The court determined that:

(1)    the statutes invoked in counts 7, 8 and 9 permit private-citizen suits, but only for declaratory and equitable relief, not damages, fines, attorneys fees and costs, etc.;

(2)    plaintiffs have standing to bring the environmental statutory claims in counts 7-9; and

(3)    even if plaintiffs seem to have made out a *prima facie* case on the environmental statutory claims in counts 7-9 as to Capital which those defendants thus far have not yet persuasively rebutted, summary judgment would be premature before completion of discovery;

(4)    The Michigan Supreme Court's *Fultz* tort/contract doctrine forecloses count 14 (negligence) as to Capital, but they have not presented authority for applying *Fultz* to foreclose counts 7-9 (enforcement of state environmental-protection statutes), count 10 (statutory nuisance *per se* based on violation of a city stormwater ordinance), or count 11 (statutory trespass).

To afford the plaintiffs an opportunity for fuller discovery, the court denied without prejudice the plaintiffs' and Capital defendants' cross-motions for summary judgment on the merits of Count 7 - Michigan Clean Water Act (NREPA Part 31), Count 8 - Michigan Soil and Sedimentation Act (NREPA Part 91), Count 9 - Michigan Inland Lakes and Streams Act (NREPA Part 301), Count 10 - Michigan Statutory Nuisance *Per Se*, Count 11 - Michigan Statutory Trespass. *See Zanke-Jodway v. Boyne City et al.*, No. 08-cv-930, 2009 WL 3205969(W.D. Mich. Sept. 29, 2009) (Maloney, C.J.).

BEN SACKRIDER and PHILLIP VAN DERMUS d/b/a |
TRI-COUNTY EXCAVATING, |
|
CITY OF BOYNE CITY, a municipal corporation, |
ELEANOR STACKUS, individual   [Mayor], |
RONALD GRUNCH, an individual  [Commissioner], |
DAN ADKISON, an individual    [Commissioner], |
JERRY DOUGLAS, an individual   [Commissioner], |
DENNIS JASON, an individual    [Public Works Dep't] |
MICHAEL CAIN, an individual    [City Manager], |
DAN MEADS, an individual     [Water Dep't Dir.], |
|
MICHAEL E. GABOS and ANN GABOS, |
|
FIFTH THIRD MORTGAGE-MI, LLC, a Delaware Corp., |
|
DEBORAH A. SPENCE, an individual, |
DEBORAH A. SPENCE d/b/a A.C.E. Appraisal, |
|
JAMES J. LUYCKX and CAROLYN S. LUYCKX, |
|
CLARKE R. HAIRE, BETTY JANE HAIRE, and |
LYNN J. HAIRE, |
|
      Defendants. |
|
_____

**ORDER**
**Dismissing the Complaint as to Some Defendants Due to Lack of Prosecution and**
**ORDER**
**Denying Without Prejudice as Moot**
**Certain Pending Motions 76, 79, 80, 81, 82, 85, 87, 91, 107, and 112**


      The plaintiffs are proceeding *pro se*, but the court notes that plaintiff Alaina Zanke-Jodway

is an attorney admitted to the Michigan Bar, as indicated by the Michigan Bar membership number

("P" number) underneath her name on the plaintiffs' filings. The quality of the writing and

reasoning, the competent and correct use of legal terms and concepts, and the breadth and

organization of the plaintiffs' exhibits are all consistent with what one would expect from a licensed attorney, albeit not (as Ms. Zanke points out) an attorney specializing in environmental law. *Cf. N'Jai v. Floyd*, 2009 WL 1531594, *1 n.4 (W.D. Pa. May 29, 2009) ("[W]hile plaintiff is *pro se* . . . she has instituted numerous civil actions in this court and has, or should have, gained experience and familiarity with the requisites of maintaining a civil action in federal court.") (internal alterations and quotation marks omitted, citation omitted).

This case implicates Michigan's Natural Resource and Environmental Protection Act ("NREPA"), which is Chapter 324 of the Michigan Compiled Laws. Counts seven, eight and nine may all implicate NREPA Article I - General Provisions (especially Part 3 - Definitions and Part 17 - Michigan Environmental Protection Act ("MEPA")). Count seven implicates NREPA Part 31. Count eight implicates NREPA Article II Chapter 2 - Nonpoint Source Pollution Control (especially Part 91 – Soil Erosion and Sedimentation Control). Count nine implicates NREPA Article III, Chapter 1, Part 301, especially sections 30101, 30102, and 30106. The plaintiffs also assert many tort claims under Michigan's statutory and common law.

The property at issue in this action is a home and two lakefront lots at 324 Bay Street, in the Original Plat of Spring Arbor, located in Boyne City, Charlevoix County, Michigan. As of March 2005, the property was owned by non-parties Michael and Elizabeth Pilobosian; in June 2005, they sold it to defendants Michael and Ann Gabos for $549,000. *See* Am Comp ¶¶ 40 & 49. On July 20, 2005, plaintiffs Alaina M. Zanke-Jodway and Timothy M. Jodway ("together "Jodway") made a $649,000 purchase offer to Gabos; the sale closed on August 3, 2005. Am Comp ¶¶ 1-3, 26, and 50.

Defendant Fifth Third Bank - Michigan, LLC provided financing for the June 2005 Gabos purchase and the Jodway purchase less than two months later. For both transactions, Fifth Third

commissioned and relied on appraisals done by defendant Deborah Spence, a licensed Michigan residential real-estate appraiser, through her company A.C.E. Am Comp ¶¶ 27, 29-30, and 52-53.

The August 3, 2005 Warranty Deed ("the deed") states that the property includes three lots. *Id.* ¶3. Block 4 - Lot 14 is a corner lot which contains their house; the front of the house faces Bay Street, and the side of the house faces Addis Street. *Id.* ¶ 4. Block 1 - Lots 1 and 2 have a steep slope and a bluff, with 23 cement steps leading to a more-gently sloped flat area, and then a boulder ("rip rock") seawall which ranges from five to eight feet high in front of their beachfront. *Id.* ¶¶ 4-5.

Next to Lot 14 (Jodway's house) is an unimproved small triangular lot owned by defendant City of Boyne City ("Boyne City"), a municipal corporation. Am Comp ¶¶ 9-10. During the relevant time period, Boyne City employed these defendants: Mayor/Commissioner Stackus; Commissioners Grunch, Adkison, and Douglas; Public Works Director Jason; City Manager Cain; and Water Department Director Meads. Am Comp ¶¶ 11-19.

Next-door and down-slope from the Jodway property is 320 Bay Street (owned by defendants James J. Luyckx and Carolyn S. Luyckx, together "Luyckx"), which experienced stair washout from water run-off directed down their driveway. *Id.* ¶¶ 35 and 45. Next-door to and down-slope from that is 318 Bay Street (owned by defendants Clarke, Betty Jane, and Lynn Haire), which had a private drain from Bay Street through their property into Lake Charlevoix. *Id.* ¶¶ 37 and 46-47.

Although Jodway did not own the property until August 2005, the relevant events began about five months earlier, when defendant City of Boyne City ("the City") searched for a contractor to provide engineering design services and supervise the reconstruction of Bay Street. Am Comp ¶ 40. , prepared Capital's proposal. Am Comp ¶¶ 19-21. On March 2, 2005, defendant Capital

Consultants, Inc., submitted a proposal to The City which was prepared by defendants James M. Fox and James E. Hirschenberger, Capital employees who were licensed by the State of Michigan as professional engineers. Capital's Bay Street proposal read, in pertinent part:

> The reconstruction of Bay Street from John Street to Addis Street, a length of approximately 600 feet. The improvements will include the reconstruction of the existing seal coat roadway with new HMA pavement, drainage and culvert improvements, [and] sanitary sewer and water main replacement. The sanitary sewer will be replaced on John Street from Michigan Avenue to Bay Street.

> The existing roadway is approximately 16 feet wide and the new roadway will likely be replaced at the same width and location. *Although the City has 66 feet of right of way, in this area, some of it is not usable due to the location of the bluff to the lake, and a portion of the existing road may not be in the right of way.* Existing drains to the lake will be utilized where possible. It is not anticipated that new storm outlets to the lake will be included as part of the project.

Defs' MSJ (Doc. No. 58), Ex A at unnumbered page 3 (paragraph break added, emphasis added).

According to Jodway, the "existing drains" referred to in the Capital Proposal were (1) a drainage pipe that ran from a Bay Street catch basin, through the Haires' lakefront property, whose property is "two doors down" from Jodway, and (2) a private catch basin and drain installed by the prior owner of the Jodway property to prevent water run-off from eroding the soil and slop beneath the cement steps of lakefront lots 1 and 2 of the Jodway property. *See* Am Comp ¶ 43.

On April 25, 2005, Boyne City held a Bay Street construction "kick-off meeting", where its Public Works Director discussed the following issues with Capital and its engineers, Fox and Hirschenberger: (1) existing drainage pipes were inadequate; (2) the City had no right-of-way over the Jodway property for laying water pipes and a fire hydrant; (3) the City had no "flowage" easement over Jodway Lots 1 and 2 to allow run-off and storm water to drain into Lake Charlevoix; and (4) the project might require "grading" permits. Am Comp ¶¶ 43-44.

At a meeting on July 21, 2005 – the day after Jodway made a purchase offer to Gabos –

Boyne City, Jason and/or Meads directed Capital to design and install a new catch basin and connect it to the existing catch basin on Jodway Lots 1 and 2, in order to drain neighborhood run-off and storm water from Bay Street over the Jodway property and into the lake. Am Comp ¶ 51.

On August 3 – the day the Gabos sale to Jodway closed – Capital asked Boyne City to advertise and solicit excavation contractor bids for the Bay Street reconstruction project. Am Comp ¶ 54. On August 17 – two weeks after Jodway took possession – Boyne City and Capital applied to the Michigan Department of Environmental Quality ("DEQ") for a permit to lay water pipes and a fire hydrant through Jodway's Lot 14 (the corner lot, where their house was located), even though they allegedly knew that the proposed location was not within a valid right of way, *id.* ¶¶ 55-56.

On August 30, 2005, Boyne City held a Special Commissioners Meeting where Mayor Stackus and Commissioners Grunch, Adkison, and Douglas voted to proceed with the Bay Street reconstruction (as recommended by Jason and Cain). Jodway alleges that they knew that Capital's design would encroach on their property rights in three respects: (1) run-off and storm water, a "non-point" source of pollution, would be directed through Jodway's lakefront lots and discharged into the lake; (2) the grade and topography of Bay and Addis Streets would be changed to form a bowl to collect run-off and storm water diverted from Luyckx and Haire  to the Jodway property; and (3) the proposed location of the water pipes and fire hydrant was outside a platted right of way and encroached on Jodway Lot 14. They rejected Commissioner Vondra's motion to give notice to Jodway before proceeding. *Id.* On September 2, 2005, City Public Works Director Jason notified all Bay Street residents *except Jodway* that the project would begin soon. *Id.* ¶¶ 57-58 and 62-63.

In September 2008, Jodway filed the original complaint in the Circuit Court of Charlevoix

County, Michigan, and the Boyne City defendants jointly effected timely, proper removal to this court in October 2008. In December 2008 the plaintiffs filed their first amended complaint, and the defendants filed answers and affirmative defenses in December 2008 and January 2009.

The parties filed motions for summary judgment as follows:

February 9, 2009 ~~Doc. 58~~ ~~Capital Defendants~~ ~~Resolved Sept. 2009~~
March 17, 2009 ~~Doc. 62~~ ~~P's Opp & Cross-Motion~~ ~~Resolved Sept. 2009~~

**April 28, 2009** **Doc. 76** **The Boyne Defendants' Motion for Partial SJ**
May 7, 2009 Doc. 79 The Haires' concurrence in Boyne Defs.' motion
*Jodway did not file opposition by the August 20, 2009 extended deadline, see Doc. 106.*

**May 5, 2009** **Doc. 78** **TriCounty Defendants**
    May 2009 Doc. 80 The Haires' concurrence in TriCounty motion
    May 2009 Doc. 81 Spence/ACE's concurrence in TriCounty motion
**August 20, 2009** **Docs. 108-09** **P's Opp & Cross-Motion**
    Sept 2009 Doc. 110 TriCounty Defendants' Opp/Reply Brief

**May 13, 2009** **Doc. 82** **The Luyckxs**
    May 2009 Doc. 85 The Haires' concurrence in Luyckxs' motion
*Jodway did not file opposition by the August 20, 2009 extended deadline, see Doc. 106.*

**May 22, 2009** **Doc. 87** **Fifth Third**
*Jodway did not file opposition by the August 20, 2009 extended deadline, see Doc. 106.*

**May 26, 2009** **Doc. 91** **Spence/ACE**
*Jodway did not file opposition by the August 20, 2009 extended deadline, see Doc. 106.*

**July 30, 2009** **Doc. 107** **Gabos**
*Jodway did not file opposition by the August 30, 2009 deadline, see FED. R. CIV. P. 6.*

**Nov. 13, 2009** **Doc. 112** **Gabos Motion for Entry of Judgment**
*Jodway did not file opposition by the December 13, 2009 deadline, see FED. R. CIV. P. 6.*

By order dated June 23, 2009 (Doc 103), the Magistrate Judge gave plaintiffs until July 23, 2009 to respond to the pending dispositive motions, even though the Federal and Local Rules would have made most of their response briefs due at least two months earlier. (Specifically, the Boyne

Defendants filed their motion for summary judgment on April 28, 2009, making the plaintiffs'
opposition ordinarily due on about May 28, 2009. The summary-judgment motions of the Luyckxs,
the Tricounty Defendants, Fifth Third, and Spence were filed in May 2009, making the plaintiffs'
opposition briefs ordinarily due on the corresponding dates in June 2009.) On July 22, 2009, the
plaintiffs moved for a further extension of time in which to file their opposition briefs (Doc 104);
the next day, over the objection of the Luycks (Doc 105), the Magistrate Judge granted plaintiffs an
additional four weeks, until August 20, 2009, to file their opposition briefs (Doc 106). That deadline
came and went, and the plaintiffs filed a response to only one of the motions pending against them.

The Boyne City Defendants' motion for summary judgment was filed nearly ten months ago,
while the Luycyx, Spence, and Fifth Third motions and concurrences were all filed more than eight
months ago. The Gabos' motion for summary judgment was filed more than five months ago, and
their motion for entry of judgment more than three months ago. As to each of these six motions and
the concurrences therein, the plaintiffs neither filed a response nor even sought a further extension
of time in which to do so, whether before or after the applicable deadlines.

By order issued Thursday, February 4, 2010, this court gave the plaintiffs until Friday,
February 19, 2010, to file a brief which shows "good cause" for their failure to prosecute their case.
The court advised the plaintiffs that "**If** the court does not receive such brief, or if such brief fails
to show good cause, **then** the case will be dismissed on Monday, February 22, 2010, FED. R. CIV.
P. 41, for lack of prosecution." Boldface in original. *See Great Lakes Exploration Group, LLC v.
Unidentified Wrecked and Abandoned Sailing Vessel*, 2006 WL 370878, *3 (W.D. Mich. Nov. 20,
2006) (Bell, C.J.) ("The Court's local rules provide that '[a] judicial officer may issue an order to
show cause why a case should not be dismissed for lack of prosecution or for failure to comply with

these rules, the Federal Rules of Civil Procedure, or any court order.  If good cause is not shown, the court may order dismissal of the case with or without prejudice.") (citing W.D. MICH. LCIVR 41.1), *rev'd on other grounds*, 522 F.3d 682 (6th Cir. 2008).

**The plaintiffs here filed a response which certainly inspires personal sympathy, but which does not show good cause for the repeated and longstanding failure to prosecute their case against most of the moving defendants.**  Plaintiff Alaina Zanke-Jodway, Esq., devotes much of her response to the order to show cause to describing the emotional toll which the alleged wrongdoing and then this lawsuit have taken on her and her relationship with her husband, co-plaintiff Timothy Jodway.  She writes, in pertinent part,

> I didn't move to Boyne City to become an environmental or real estate attorney, but through self-study built up enough expertise to bring this lawsuit. * * * I think Your Honor's seventy-two (72) page opinion on [the Capital Defendants' motion for summary judgment and the plaintiffs' cross-motion for summary judgment] speaks to the complexity of this case.

> Added to the responsibility of developing expertise in environmental law and all facets of real estate law is the personal burden of a six hundred forty nine thousand dollar ($649,000) mortgage for the purchase of a home that the City and neighbors think nothing of having made into a storm water cesspit and clouding its title, a small town (population 3,500) where everyone knows your personal business and you don't even know their name, the derogatory pointing and the ridicule for having the audacity to fight for your property rights and stop the government's year [sic] of infringing upon the property rights of its citizenry, being lied to again and again by government officials and neighbors you thought were your friends, stalking by government employees who repeatedly drive by or hover around your home and property, isolation because nobody wants to get involved or stand up for what's right, all while trying to work your full-time and three-quarter time jobs and raise your eight (8) year old daughter and protect her from people probing her for information.

> This is the recipe for stress, sleepless nights, no trust in people, fear of financial devastation, that over the years cultivated my depression, meltdowns of uncontrollable sobbing, marital discord, chest pain, an abnormal EKG indicating a probable heart attack, panic attacks, anxiety attacks and ultimately the need for

psychotropic medication (Exhibit YY).[2]

> The though of having to pay for a house that we could never sell because of lack of marketable title and how we have been defrauded overwhelmed me as I worked on this case to the point of uncontrollable sobbing. I have been working on this case through the meltdowns and increased intermittent chest pain although I don't have much to show for it except a seven (7) foot tall pile of research, documents and incomplete response drafts. With medication I have ben able to divert myself from going into a meltdown and my health care provider expects improvement.

P's Response to Show-Cause Order at 4-6 (other citations to exhibits omitted).

Plaintiff Zanke next emphasizes that the file in the case is voluminous, *see* Plaintiffs' Feb. 19, 2010 Response to Feb. 4, 2010 Order to Show Cause at 7, but there is no precedent suggesting that a plaintiff's failure to observe motion deadlines or even seek extensions is excused by the fact that a lawsuit is complex, protracted, or entails a large file.

Zanke also explains that she "became lost" and depressed when an EKG test yielded an abnormal result which suggested an "interior infarction or heart attack" at only age 43. *Id.* at 3 (citing Ex YY). Assuming *arguendo* that both the test result and its emotional impact were as Zanke alleges, it does little to excuse the complete failure to attend to numerous dispositive motions for many months. Zanke does not allege or provide evidence that she was hospitalized or incapacitated, or that she was in such a state for a long period of time. In any event, absent evidence to the contrary – such as intensive home care by Mr. Zanke for Mrs. Zanke – Mrs. Zanke's medical

---

[2]

As the Boyne Defendants point out, however, the medical records which Zanke has provided are dated September 2009 and later. *See* Boyne City Defs' Reply filed Feb. 23, 2010 to P's Response to Order to Show Cause (Doc 123) at 4-5. September 2009 was *after* the extended August 20, 2009 deadline, and four month after the Zankes' original deadline to oppose the Boyne Defendants' motion for summary judgment.

Defendants Fifth Third and Deborah Spence filed concurrences in the Boyne Defendants' reply on February 23, 2010. *See* Docs 124 and 125.

condition ordinarily would not be expected to render *Mr.* Zanke incapable of at least writing a short letter to the court or opposing counsel to suggest a further extension of the motion response deadlines (preferably before the deadlines passed). *Cf. Ahearn v. City of Palos Verdes*, 2009 WL 1011071, *4 (C.D. Cal. Apr. 14, 2009) ("Plaintiff had not even purported to provide an explanation or excuse for why, if her allegation about her health condition not improving and getting worse were true, plaintiff did not seek a further extension of the . . . deadline before that deadline lapsed.").

**Zanke devotes much of her show-cause brief to an argument of the merits, but she fails to show how these substantive arguments are relevant to the good-cause / lack-of-prosecution determination.** For example, Zanke points to the fact that in defendants Michael and Ann Gabos's declaration, they "do not deny knowledge of the [Boyne City Bay Street reconstruction] project, only 'specific details.'" *Id.* at 8 (quoting Doc 107 ¶ 6). Zanke infers from this that the Gaboses sold their home to the plaintiffs "to forego the costs, hassles and time of litigation against the City", and she notes that the sale merely transferred those burdens onto the plaintiffs. *Id.* at 8. Zanke also notes that she pursued licensing sanctions against defendant Deborah Spence, a professional appraiser in Michigan, charging in those proceedings that "Fifth Third gave her a 'get to value' by providing her with our Purchase Agreement (Exhibit D) [which should be compared ] with the appraisal order (Exhibit M, last page)." *Id.* at 8. Zanke further alleges that she learned that the Capital Defendants made a knowing misrepresentation to MDEQ Engineer "that the sewer lines were located on private property pursuant to an agreement with the property owners. That agreement never existed." *Id.* at 8-9. These facts, allegations, and theories regarding defendants Gabos, Spence, Fifth Third Bank, and Capital are immaterial to whether the plaintiffs had good cause for missing so many deadlines, by such long periods of time, and failing to file motions for

an extension or a Rule 56(f) abeyance.

Zanke next charges that the burden on her has been made greater by defendants' "fraudulent concealment of material facts", such as Boyne City's alleged failure to respond to FOIA requests, its alleged failure to produce a "citizen contact log" which former City Planner Dan Reed says he let with the City when he left its employ, and the alleged deliberately misleading misstatement (on the Michigan DEQ website and/or the City's DEQ application) of the project's location. *See* P's Show-Cause Brief at 7-8; *see also id.* at 6 ("From April of 206 through September 2008, we attempted to work with the Defendant's [sic] to correct the illegal acts, but were misled, lied to, and stonewalled by the various defendants."); *id.* at 9 ("Defendants have repeatedly demonstrated their 'modus operandi' of concealing material facts."). These arguments are unavailing. If the plaintiffs truly believed that defendants were violating the Federal Rules of Civil Procedure or court orders regarding discovery, they could and should have filed a motion to compel and, if appropriate, a motion for sanctions, regarding each of the alleged instances of discovery wrongdoing alleged above.

**Zanke now asks the court to hold the summary-judgment motions in abeyance even longer so she can pursue additional discovery.** She argues that

> In filing their motions for summary dismissal without us having the benefit of discovery the risk is too great that they will be rewarded with a favorable decision while concealing material inculpatory information from us and this Court. Otherwise, for the Court to rule on the motions, grant discovery and then have to re-visit the motions is a waste of the Court's time and our limited time and resources. Especially in light of the policy that favors disposition of cases on their merits and the public's interest in expeditious resolution of litigation. *Mulbah*[,] at 590-591.

P's Show-Cause Brief at 9. With due respect to the plaintiffs, and sympathetic recognition of the personal and medical problems which have apparently befallen Ms. Zanke, they have not placed

themselves in a position to strenuously invoke "the public's interest in expeditious resolution of litigation." Their own conduct with regard to these many long-unanswered motions has been flatly inconsistent with that public interest. "Notwithstanding this public policy, it is the responsibility of the [plaintiffs] to move toward that disposition at a reasonable pace . . .", *Contreras v. Astrue*, 2009 WL 3125472, *2 (C.D. Cal. Sept. 25, 2009) (citing *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 652 (9th Cir. 1991)), and they failed to do even what might be expected under the circumstances described by Ms. Zanke-Jodway.

**If indeed the plaintiffs had legitimate, specific discovery needs still outstanding when it came time for them to oppose the summary-judgment motions, they could and should have filed a Rule 56(f) motion and affidavit before their opposition deadline.** *See Spurlock v. Halprin*, 2006 WL 2346003, *6 (M.D. Tenn. Aug. 11, 2006) (noting that district court had earlier denied Rule 56(f) as untimely because it was filed two days after the deadline for briefs in opposition to summary judgment, rejecting plaintiff's argument that "[t]here's no set deadline for filing a Rule 56(f) motion, unless you do it after the summary judgment is granted."); *cf. Fillmore v. Page*, 358 F.3d 496, 510 (7th cir. 2004) (Ripple, Kanne, <u>Wood</u>) ( affirming SJ for the defendants and finding that plaintiff had a meaningful opportunity to the summary judgment motion, panel stated, "As the October 11 deadline [for opposition briefs] approached and the court had not yet disposed of his October 2 motion requesting a further extension of discovery, the safest course for Fillmore was to file an opposition anyway, along with an affidavit outlining his reasons for needing further discovery as contemplated by Rule 56(f).").

If the Zankes could not file the Rule 56(f) request prior to the deadline(s) for their opposition brief, they at least could and should have done so within some reasonable period of time after the

opposition deadline(s) – not months after the deadline and only upon prodding by the court under penalty of dismissal for lack of prosecution. Plaintiff Alaina Zanke-Jodway is a licensed attorney admitted to, and apparently in good standing with, the Bar of Michigan. Unlike non-attorneys proceeding *pro se*, then, the court can expect that she was aware of Rule 56(f) or its state counterpart, or at least the concept of asking a court to hold summary-judgment motions in abeyance (or deny them without prejudice) to enable the opposing party to meaningfully oppose the motion. *See Med. Mut. of Ohio v. K. Amalia Enters., Inc.*, 548 F.3d 383, 394 n.8 (6th Cir. 2008) ("Despite the fact that MMO considers the allegedly newly-discovered evidence to be critical to its case now, we note that MMO did not file a motion under Rule 56(f) when it responded to the motion for summary judgment. * * * We agree with the district court's analysis: 'If the state of the evidence was incomplete when [MMO's] response to the summary judgment motion was due, MMO should have sought relief pursuant to Rule 56(f).'"); *Brooks v. U.S. Liberty Mut. Fire Ins. Co.*, 2009 WL 5171728, *5 n.2 (E.D. Mich. Dec. 30, 2009) (rejecting plaintiff's argument that defendant's summary-judgment motion was premature because she had not had adequate time for discovery, noting, "Pursuant to [Rule] 56(f), Plaintiff could have, but did not, show by affidavit why she was unable to present facts essential to support her opposition to the motion."); *Jones v. Brunsman*, 2009 WL 4110961, *2 (S.D. Ohio Nov. 19, 2009) (denying plaintiff's motion for reconsideration of summary judgment and noting, "his repeated assertion that the court should have ordered a Rule 56(f) continuance is belied by the fact that he never asked for such a continuance.").[3]

---

[3]

*Cf. Molnar v. Care House*, 2009 WL 5125520, – F. App'x – (6th Cir. Dec. 29, 2009) (Siler, Gilman, Rogers) (because plaintiff did not file a Rule 56(f) affidavit in the district court, he did not preserve for appeal the argument that it was erroneously premature to grant summary judgment without allowing further discovery); *Hill v. Blue Cross Blue Shield of Tennessee*, No. 96-5639, 117 F.3d 1420, 1997 WL 397203 (6th Cir. July 14, 1997) (p.c.) (Jones, Suhrheinrich, Siler) (same);

-14-

**LEGAL STANDARD:  DISMISSAL FOR FAILURE TO PROSECUTE**

Our Circuit has "held that a district court has three different sources of authority to dismiss a case for failure to prosecute."  *Rogers v. City of Warren*, 302 F. App'x 371, 375 (6th Cir. 2008) (Griffin, J.) (citing *Coleman v. American Red Cross*, 23 F.3d 1091, 1094 n.1 (6th Cir. 1994)).

Pertinent here is the court's authority to dismiss a case for failure to prosecute pursuant to FED. R. CIV. P. 41(b), which permits the court to involuntarily dismiss an action, either *sua sponte* or on another party's motion, if a plaintiff fails to prosecute his case or fails to comply with a court order.  *Rogers*, 302 F. App'x at 375 and n.5 (citing *Link v. Wabash R.R.*, 370 U.S. 626, 630 (1962)); *see, e.g., Johnson v. Cleveland Heights / Univ. Hts. Bd. of Ed.*, No. 94-3523, 66 F.3d 326, 1995 WL 527365, *2 (6th Cir. Sept. 6, 1995) (per curiam) (Jones, Guy, Boggs) (noting that after plaintiff failed to respond to January 8, 2003 summary-judgment motion and requested an extension of his response time after the district court expressly warned that it would not grant further extensions, "on June 7, 1993, the district court dismissed Johnson's case with prejudice, *sua sponte*, for failure to prosecute and failure to respect the court's orders regarding further extensions of time.") .  "[Another] source is the court's 'inherent power to protect the due and orderly administration of justice and maintain the authority and dignity of the court.'" *Rogers*, 302 F. App'x at 375 (quoting *Bowles v. City of Cleveland*, 129 F. App'x 239, 241 (6th Cir. 2005) (citing *Cooke v. US*, 267 U.S. 517, 539 (1925)) (internal alterations and ellipses omitted).  These two sources of authority which the court invokes to dismiss part of the plaintiffs' case today.

**The court considers four factors when deciding whether to dismiss some or all of the plaintiffs' complaint for lack of prosecution:**    (1) whether the plaintiffs' failure is due to

_____

*Potters Med. Ctr. v. City Hosp. Ass'n*, 800 F.2d 568, 574 (6th Cir. 1986) (same).

willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the plaintiffs' conduct; (3) whether the plaintiffs were warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before ordering dismissal. *See Rogers*, 302 F. App'x at 375. "'[T]ypically none of the factors is outcome-dispositive . . . .'" *VM Servs., Inc. v. Two Men and a Truck, Int'l*, 2009 WL 3485709, *2 (W.D. Mich. Oct. 28, 2009) (quoting *Knoll v. AT&T Co.*, 176 F.3d 359, 363 (6th Cir. 1999) (citation omitted)).

**DISCUSSION**

**As to the first factor,** the defendants have not suggested, and the court does not find, that the plaintiffs' failure to prosecute their case against numerous defendants is willful or in bad faith. But the first factor for lack-of-prosecution dismissal is satisfied  a showing of "'*either* an intent to thwart judicial proceedings *or a reckless disregard for the effect of [their] conduct on those proceedings*.'" *Winters v. Freres*, 209 WL 427226, *8 (W.D. Mich. Feb. 19, 2009) (quoting *Schafer*, 529 F.3d at 737) (holding that plaintiff's failure to re-file complaint within time allotted did not evince bad faith but did show fault "in that he was at best extremely dilatory not pursuing his claim, which indicates an intention to let the case lapse. We therefore conclude that this factor supports the district court's finding that Schafer's conduct amounted to a failure to prosecute his claim.") (emphasis added); *see, e.g., Underhill v. Illinois Student Assistance Comm'n*, 2005 WL 297290, *2 (W.D. Mich. Sept. 21,2005) (Edgar, J.) ("Although the court cannot say that the plaintiff's failure to prosecute is due to willfulness or bad faith, the Court finds that he is clearly at fault.").

In the face of substantial medical and personal problems, and without an attorney's

assistance, a *pro se* litigant's failure to file timely opposition to a dispositive motion might not invariably constitute reckless disregard for judicial proceedings in this sense. That would be particularly true if the litigant moved for an extension of time before the deadline, or perhaps even if the litigant belatedly moved for an extension *nunc pro tunc* and/or filed a late brief which it asked the court to accept. Or, in an appropriate situation, the *pro se* litigant might have explained that he needed more time for specific discovery before being required to respond to a summary-judgment motion (a request to hold in abeyance or deny without prejudice the summary-judgment motion per FED. R. CIV. P. 56, though a *pro se* litigant would not be expected to cite the rule). But the plaintiffs here did not act belatedly with respect to a dispositive motion – they simply failed to act *at all*. Moreover, the plaintiffs failed to act in response to not one but many dispositive motions.

**This also satisfies the second factor for a lack-of-prosecution dismissal.** The plaintiffs' conduct left not one but more than a *dozen* opposing parties expending substantial time, effort, and monies to pay their counsel for dispositive-motion briefs and to provide their counsel with facts and directions for the preparation of those briefs. The moving defendants would also be left with the uncertainty, stress, and potential adverse publicity of the plaintiffs' pending claims against them for a far longer period than necessary. *See Palacios v. Fresno Cty. Superior Ct.*, 2010 WL 489692, *4 (E.D. Cal. Feb. 5, 2010) ("The [second] factor, risk of prejudice to defendants, also weighs in favor of dismissal, since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action.") (citing *Anderson v. Air West*, 542 F.2d 52, 524 (9th Cir. 1976)). The moving defendants would be severely prejudiced if, after they were required to observe the dispositive-motion deadline and other deadlines, the plaintiffs were allowed to completely disregard multiple response deadlines, make no effort to ask opposing counsel or the court for an extension over the

course of months, and then be permitted nonetheless to muster opposition over half a year later.

The court cannot establish the precedent that a *pro se* party may ignore court deadlines, procedures, and rules – and the legitimate expectations of the opposing parties as to efficient adjudication of the case – whenever the *pro se* parties feel so overwhelmed by personal or medical problems that they subjectively "cannot" even write a one-paragraph letter to the court or opposing counsel explaining the medical and other issues and asking for an extension. *See N'Jai v. Floyd*, 2009 WL 1531594, *14 n.31 (W.D. Pa. May 29, 2009) (dismissing *pro se* complaint for failure to prosecute and noting that "Plaintiff never attempted to contact the court by letter, email, or a telephone call to notify the court as to her illness or housing issues which she claims inhibited her ability to prosecute this case in accordance with this Court's orders, the Federal Rules of Civil Procedure as well as this Court's Local Rules.") (record citation omitted). In the absence of a truly dire and prolonged medical emergency preventing *both* these plaintiffs from making even that minimal effort with regard to the defendants' dispositive motions, both efficiency and justice require more than this even from *pro se* litigants. *See McLehan v. Mortgage Electronic Registration Sys.*, 2009 WL 2393449, *1 (E.D. Mich. Aug. 4, 2009) ("Plaintiff states that he was unable to file a response to the Defendants' Motion to Dismiss due to his wife's medical condition. Plaintiff [also] relies on his *pro se* status . . . . Even a *pro se* litigant, however, is required to follow basic procedural rules. 'A willfully unrepresented plaintiff volitionally assumes the risk and accepts the hazards that accompany self-representation.'") (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000) (citing *McNeil v. US*, 508 U.S. 106, 113 (1993) (unanimous) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.") (footnote

10 omitted))).

**Nor is the propriety of lack-of-prosecution dismissal undermined by factors three and four.** As for factor three, this court's February 4, 2010 Order to Show Cause put the plaintiffs on notice that the court was considering dismissal of their case if they failed to show good cause for their prolonged dereliction, and affording them the opportunity to show such cause.

As to the fourth factor, our Circuit has held that "'it is not an abuse of discretion to dismiss, even though other sanctions might be workable, if dismissal is supportable on the facts.'" *Bradbury v. Plymouth Tp.*, No. 94-2232, 107 F.3d 870, 1997 WL 76187, *4 (6th Cir. Feb. 20, 1997) (Wellford, Ryan, Siler) (quoting *Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir. 1988)). **The court has considered a sanction short of dismissal and finds that under the circumstances, only dismissal will suffice, partly because of the duration and scope of the plaintiffs' dereliction**, *cf. Prentiss v. Abrams*, No. 96-3241, 107 F.3d 12, 1997 WL 56957, *1 (6th Cir. Feb. 10, 1997) (per curiam) (C.J. Martin, Norris, Moore) (affirming Rule 41 dismissal and reasoning, "Although this court is reluctant to deprive a plaintiff of his day in court due to his counsel's actions, *in this case the length of delay,* for which Prentiss must share responsibility with his counsel, *warranted dismissal for failure to prosecute*.") (citing *Bishop v. Cross*, 790 F.2d 38, 39 (6th Cir. 1986)) (other internal citation omitted), **and partly because of the dispositive nature of the motions which plaintiffs failed to oppose.**

On this latter point, the court's conclusion is guided by the fact that plaintiffs' dereliction consisted of failing to take any action in response to motions *which themselves already called for the dismissal of plaintiffs' claims against them.* If plaintiffs did not intend to provide any opposition – let alone *timely* meaningful opposition – to the dispositive motions, they could have stipulated to

the dismissal of their claims against the movants. Conversely, if plaintiffs did not agree that their claims against the moving defendants were subject to summary judgment, they had the obligation (and the opportunity, in summer 2009) to show that a genuine issue of material fact existed as to each of the elements of their claims against those defendants. *See Miles v. Booth*, No. 00-1332, 238 F.3d 422, 2000 WL 1800565, *2 (6th Cir. Nov. 30, 2000) (per curiam) (Ryan, Norris, Edgar) ("Miles failed to respond to the defendants' motion for summary judgment, despite two clear directives to do so. Once the moving party has met its burden of production, the nonmoving party cannot rest on his pleadings to get to a jury. * * * Miles cannot rely on his *pro se* status to excuse his failure to respond. * * * We conclude that the district court properly granted the defendants' motion for summary judgment."); *McCarroll v. Sigman*, 2008 WL 2064796, *1 (W.D. Mich. May 13, 2008) (Enslen, Sr. J.) (after the movant identifies the basis on which he believes summary judgment should be granted, "[t]he burden then shifts to the nonmovant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine issue for trial.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[4]

---

[4]

Plaintiffs did not attempt to show such genuine issues, and that failure alone might seem to warrant granting the summary-judgment motions as unopposed, without invoking Rule 41 or the court's inherent authority to dismiss for lack of prosecution. *See, e.g., Cobbins v. Tennessee DOT*, 566 F.3d 582, 588-89 (6th Cir. 2009) (noting, without disapproval, that in earlier racial-discrimination and harassment case brought by plaintiff, "Defendant was granted summary judgment . . . because plaintiff failed to file a timely response to Defendant's motion for summary judgment."); *Wittenberg v. Rescue Mental Health Servs.*, No. 99-3843, 225 F.3d 660, 2000 WL 799312, *2 (6th Cir. June 16, 2000) (p.c.) (Krupansky, Norris, Suhrheinrich) (district court did not abuse discretion by dismissing case for lack of prosecution; "despite being granted extensions of time, Wittenberg, who was represented by counsel, failed to respond to the motion for summary judgment. * * * [T]hree weeks after the second deadline, the district court granted summary judgment for [defendant]."); *Mason v. Ogden Allied Aviation Servs. Corp.*, No. 94-4036, 68 F.3d 474, 1995 WL 608166, *2-3 (6th Cir. Oct. 16, 1995) (p.c.) (Contie, Nelson, Ryan) (noting without disapproval the determination in earlier case that by failing to respond to a summary judgment motion within time permitted by Local Rules, "plaintiff had, in essence, consented to the granting of the motion", and

In short, the moving "[d]efendants are being prejudiced by wasting time, effort, and money litigating a case in which Plaintiffs are not [fully] participating." *Bonzelaar*, 2009 WL 3424634 at *3 (quoting *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005)). *Pro se* status is not a license to participate in the case only on one's own timetable. *See generally Frailing v. Marquette Gen. Hosp., Inc.*, 2007 WL 1202385, *2 (W.D. Mich. Apr. 23, 2007) (Edgar, Sr. J.) (granting defendant's unopposed motion to dismiss and also dismissing for lack of prosecution, stating, "This Court

_____

holding that such dismissal was a judgment on the merits which had *res judicata* effect).

Earlier precedent from our Circuit makes clear, however, that while this court may in its discretion dismiss claims against moving parties under Rule 41 due to the opposing party's unexcused failure to respond to a dispositive motion – especially when it happens repeatedly and the lateness is extreme, as it was here, or is combined with dilatory or uncooperative conduct – it is inappropriate to grant a summary-judgment motion solely because it is unopposed. In *Carver v. Bunch*, 946 F.2d 451 (6th Cir. 1991), the district court dismissed the plaintiff's claim simply because he failed to file an opposition brief, not because his failure to file that brief (either singly or in combination with other failures or delays) rose to the level of failure to prosecute under the circumstances. The district court relied on a local civil rule, but the Circuit held that such a local rule is of no avail where it conflicts with the Federal Rules. A later panel summarized *Carver* as follows:

> On appeal, this court reversed the district court and held that "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine a movant's motion for summary judgment to ensure that he has discharged [his initial] burden. *Id.* [946 F.2d] at 455. The court bolstered its holding by considering the "overall structure of the federal rules." *Id.* at 454. The federal rules [provide] that the party filing a motion for summary judgment "always bears the burden of demonstrating the absence of a genuine issue of material fact." *Id.* The court added, "[m]ore importantly, for all purposes, the movant must always bear this initial burden regardless [whether] an adverse party fails to respond."

> * * * *Carver* . . . concluded that a district court can dismiss an action on the grounds of noncompliance with a local rule governing responses only if the behavior of the nonmoving party rises to the level of a failure to prosecute under Rule 41(b).

*Stough v. Mayville Cmty. Schs.*, 138 F.3d 612, 614, 615 (6th Cir. 1998).

understands that Plaintiff is representing herself *pro se* in this action; however, her status does not give her leave to ignore the Federal Rules of Civil Procedure . . . ."). As our Circuit held when affirming the Rule 41 dismissal of a *pro se* party's civil-rights complaint,

> No persuasive reason has been offered why Mabone should be accorded special consideration under the circumstances of this case. Mabone's civil rights action was not dismissed as a result of "inartful pleading or the lack of legal training," but rather because he failed to respond to the defendants' motions to dismiss within the readily comprehended court deadlines of which he was well aware. That he comprehended their significance is evidenced by his having sought an extension on at least two occasions.

> The district court was generous in granting extensions which Mabone failed to utilize. Here, the district court concluded that Mabone's failure to pursue his case despite two extensions of time was unwarranted and merited dismissal. * * * Mabone was aware of his obligation to proceed, and no special circumstances point to an abuse of discretion by the district court . . . .

*Mabone v. Yarbrough*, No. 91-5963, 959 F.2d 234, 1992 WL 68236, *2 (6th Cir. Mar. 30, 1992) (per curiam) (Nelson, Boggs, Sr. J. Peck) (paragraph break added). *See also, e.g., Alsup v. Int'l Union of Bricklayers and Allied Craftsmen of Toledo, Ohio*, Nos. 87-3930 & 87-3948, 902 F.2d 1568, 1990 WL 67375, *3 (6th Cir. May 22, 1990) (Boggs, <u>Engel</u>, W.D. Mich. D.J. Gibson) (affirming district court's January 16, 1987 Rule 41 dismissal for plaintiffs' failure to respond to November 4, 1986 summary-judgment motion).

This is particularly true where, as here, the party has a very long period of time, yet does not even contact the court or opposing counsel to advise them of extenuating circumstances which unavoidably impairs ability to meet deadlines and do their part to move the case towards a decision on the merits. It is appropriate, then, to dismiss the plaintiffs' claims against those defendants who went through the significant trouble and expense of filing timely dispositive motions, only to receive no response, no explanation from the plaintiffs, no request for an extension due to personal or

medical problems, no request from the plaintiffs for more discovery. As the panel reasoned in *Farah v. Wellington*, 295 F. App'x 743 (6th Cir. 2008) (Cole, Gibbons, D.J. Forester),

> [A]fter [plaintiff] failed to file a response to Defendants' summary judgment motion, the district court dismissed all of [his] claims . . . for failure to prosecute.
>
> * * *
>
> Although [plaintiff] is a *pro se* litigant, and we have a corresponding duty to him "the benefit of a liberal construction of [his] pleadings and filings," *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999), *"pro se plaintiffs are not automatically entitled to take every case to trial . . .and the lenient treatment generally accorded to pro se litigants has limits." Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) . . . . *[Plaintiff]'s complete inattention to the merits of Defendants' summary judgment motion represents one such limit.*

*Farah*, 295 F. App'x at 745 and 748 (emphasis added); *see also Davis v. Astrue*, 2009 WL 274563, *1 (E.D. Tenn. Aug. 26, 2009) (Harry S. Mattice, Jr., J.) (although pleadings of a *pro se* litigant are to be liberally construed, the Court must and will require that duly set deadlines be followed. Dismissal of an action is appropriate where a *pro se* litigant fails to comply with a readily comprehended deadline despite sufficient opportunity to do so.") (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) (affirming dismissal of *pro se* plaintiff's case where litigant had asked for and received two extensions of time to file a dispositive motion but failed to do so)).[5] [6]

---

[5]

To allow the plaintiffs to file opposition briefs so long after the deadlines elapsed, when plaintiffs made no effort to extend those deadlines (and no effort on their own initiative even after the fact to explain their inaction), would "impermissibly allow[] plaintiff, rather than the Court to control the pace of the proceedings in this case." *Thomas v. Mendez*, 2010 WL 532419, *3 (C.D. Cal. Feb. 10, 2010) (dismissing *pro se* civil-rights complaint for lack of prosecution) (citing *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) and *Yourish v. Calif. Amplifier*, 191 F.3d 983, 990-91 (9th Cir. 1999)).

[6]

The court rejects the plaintiffs' suggestion that they should escape dismissal for their lack of prosecution merely because they assert a claim or unconstitutional Taking of property. *See* P's Response to Show-Cause Order at 9-10 (citing *Societe Int'l v. Rogers*, 357 U.S. 197, 209 (1958) (reversing Fed. R. Civ. P. 37 discovery-sanction dismissal and stating, "The provisions of Rule 37 which are here involved must be read in light of the provisions of the Fifth Amendment that no

-23-

**But this rationale does not apply to those defendants who filed dispositive motions and had the plaintiffs file an opposition brief:** the three Capital Defendants (Capital Consultants, Inc., and Lawrence Fox and James Hirschenberger), whose dispositive motion this court resolved in an earlier opinion, and the three Tri-County Defendants (Ben Sackrider, Philip Van Dermus, and both men d/b/a Tri-County Excavating), whose dispositive motion the plaintiffs timely opposed, *see* Doc (plaintiffs' brief filed Aug. 20, 2009 in opposition to Tri-County's MSJ) and Doc 108 (plaintiffs' cross-motion for SJ against the Tri-County Defendants). Absent allegations of bad faith or some dereliction pertaining to the case as a whole, the plaintiffs are entitled to a defendant-by-defendant analysis of their diligence in prosecuting their case. The record does not disclose any dereliction in the plaintiffs' prosecution of their claims against the Capital Defendants or the Tri-County Defendants. Therefore, dismissing the entire complaint would be too broad and harsh a remedy for the plaintiffs' fault. The plaintiffs' claims against the Capital Defendants and Tri-County Defendants remain, with cross-motions for summary judgment pending on the claims against the Tri-County Defendants.

## ORDER

---

person shall be deprived of property without due process of law.")).

The plaintiffs identify not a single Sixth Circuit decision (or any decision) issued in the 52 years since *Rogers* which declined to dismiss for failure to prosecute (or which reverse such a dismissal) merely on the ground that the derelict party was asserting a Takings or similar claim. Moreover, *Rogers* concerned Rule 37 discovery sanctions, not Rule 41(b) dismissal for failure to prosecute, so it is not strictly applicable here. Finally, even if our Circuit had read *Rogers* to preclude *Rule 41(b)* dismissal of Takings claims, that would not prevent Rule 41(b) dismissal of the many other claims which plaintiffs asserted against the movants (but which they failed to support in the face of those dispositive motions).

Pursuant to FED. R. CIV. P. 41, the plaintiffs' complaint is DISMISSED as to the following seventeen defendants for lack of prosecution:

–  The Eight Boyne City Defendants: the City of Boyne City, Eleanor Stackus, Ronald Grunch, Dan Adkison, Jerry Douglas, Dennis Jason, Michael Cain, and Dan Meads.

–  Michael E. Gabos and Ann Gabos;

–  Fifth Third Mortgage-Michigan, LLC

–  Deborah A. Spence and Deborah A. Spence d/b/a A.C.E. Appraisal

–  James J. Luyckx and Carolyn S. Luyckx

–  Clarke R. Haire, Betty Jane Haire, and Lynn J. Haire

**The following motions are denied without prejudice as moot:**

**Document #76**, the motion for partial summary judgment filed by defendants City of Boyne City, Eleanor Stackus, Ronald Grunch, Dan Adkison, Jerry Douglas, Dennis Jason, Michael Cain, and Dan Meads on Aril 24, 2009

**Document #79**, the motion for partial summary judgment filed by defendants Clarke R. Haire, Betty Jane Haire, and Lynn J. Haire on May 7, 2009

**Document #80**    the concurrence/motion for summary judgment filed by defendants Clarke R. Haire, Betty Jane Haire, and Lynn J. Haire on May 7, 2009

**Document #81**    the motion for partial summary judgment filed by defendant Deborah A. Spence d/b/a A.C.E. Appraisal on May 7, 2009

**Document #82**    the concurrence/motion for summary judgment filed by defendants James J. Luyckx and Carolyn S. Luyckx on May 13, 2009

**Document #85**    the concurrence/motion for summary judgment filed by defendants Clarke Haire, Betty Jane Haire, and Lynn J. Haire on May 18, 2009

**Document #87**    the motion for summary judgment filed by defendant Fifth Third Mortgage-Michigan, LLC on May 22, 2009

**Document #91**    the motion to dismiss or for summary judgment filed by defendant Deborah A. Spence on July 30, 2009

**Document #107**        the motion for summary judgment filed by defendants Michael E. Gabos and Ann Gabos on July 30, 2009

**Document #112**        the motion for entry of judgment filed by defendants Michael E. Gabos and Ann Gabos on November 13, 2009

**This order does not affect the claims against the following six defendants:**

–        The three "Tri-County Defendants":  Ben Sackrider, Philip Van Dermus, and Ben Sackrider and Philip Van Dermus d/b/a Tri-County Excavating

–        The three "Capital Defendants":
         Capital Consultants Inc., Lawrence Fox, and James E. Hirschenberger

The Court will decide the pending dispositive motions without the benefit of oral argument.

This is <u>not</u> a final and immediately-appealable order.

**IT IS SO ORDERED** on this 3<u>rd </u>day of March, 2010.

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge
