UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____
                               |

ALAINA M. ZANKE-JODWAY and     |
TIMOTHY M. JODWAY,           |    Case No. 1:08-cv-930
                               |
    Plaintiffs,                |
                               | HONORABLE PAUL L. MALONEY
       v.                    |
                               |
CAPITAL CONSULTANTS, INC., a Michigan Corp., |
LAWRENCE FOX, an individual,     |
JAMES E. HIRSCHENBERGER, an individual,   |
                               |
BEN SACKRIDER, an individual,     |
PHILLIP VAN DERMUS , an individual, and   |
BEN SACKRIDER and PHILLIP VAN DERMUS d/b/a |
TRI-COUNTY EXCAVATING,      |
                               |
    Defendants.             |
                               |
_____


# OPINION and ORDER
## *" Zanke 4 "*

### Granting in Part & Denying in Part TCE's Motion to Dismiss:
Dismissing 4 Claims under FED. R. CIV. P. 12(b)(6) for Failure to State a Claim Against TCE
Count 14 - Negligence
Count 10 - Nuisance Per Se (MICH. COMP. LAWS § 125.3407)
Count 11 - Trespass (MICH. COMP. LAWS § 600.2919)
Count 25 - Intentional Infliction of Emotional Distress


Denying FED. R. CIV. P. 12(b)(6) Motion to Dismiss the Other 3 Claims Against TCE:
Count 7 - NREPA Part 31, Clean Water Act
Count 8 - NREPA Part 91, Soil & Sedimentation Act
Count 9 - NREPA Part 301, Inland Lakes and Streams Act

### Denying the Cross-Motions for Summary Judgment as Moot on the Four Dismissed Claims:
Count 14 - Negligence
Count 10 - Nuisance Per Se (MICH. COMP. LAWS § 125.3407)
Count 11 - Trespass (MICH. COMP. LAWS § 600.2919)

Count 25 - Intentional Infliction of Emotional Distress

**Denying the Cross-Motions for Summary Judgment without Prejudice as Premature on 3 Claims:**
Count 7 - NREPA Part 31, Clean Water Act
Count 8 - NREPA Part 91, Soil & Sedimentation Act
Count 9 - NREPA Part 301, Inland Lakes and Streams Act


This *pro se* action implicates Michigan's Natural Resource and Environmental Protection Act ("NREPA"), which is Chapter 324 of the Michigan Compiled Laws. Counts seven, eight and nine may all implicate NREPA Article I - General Provisions (especially Part 3 - Definitions and Part 17 - Michigan Environmental Protection Act ("MEPA")). Count seven implicates NREPA Part 31. Count eight implicates NREPA Article II Chapter 2 - Nonpoint Source Pollution Control (especially Part 91 – Soil Erosion and Sedimentation Control). Count nine implicates NREPA Article III, Chapter 1, Part 301, especially §§ 30101, 30102 & 30106. The plaintiffs also asserted many tort claims under Michigan's statutory and common law.

**Plaintiffs assert seven claims against the moving defendants, Ben Sackrider, Philip Van Dermus, and both men d/b/a Tri-County Excavating, Inc. (collectively "TCE"):**

| | |
|---|---|
| Count 7 | NREPA Part 31, Clean Water Act |
| Count 8 | NREPA Part 91, Soil & Sedimentation Act |
| Count 9 | NREPA Part 301, Inland Lakes and Streams Act |
| ~~Count 10~~ | ~~Nuisance Per Se in violation of MICH. COMP. LAWS § 125.3407~~ |
| ~~Count 11~~ | ~~Trespass in violation of MICH. COMP. LAWS § 600.2919~~ |
| ~~Count 14~~ | ~~Negligence~~ |
| ~~Count 25~~ | ~~Intentional Infliction of Emotional Distress ("IIED")~~ |

Amended Complaint filed December 6, 2008 (Doc 45) ("Am Comp"); *see also* TCE's Answer to Amended Complaint filed December 19, 2008 (Doc 47) ("TCE Ans"). For reasons explained below, only three of the seven claims against TCE will survive today's decision; the claims which are dismissed today are listed in "strikeout" font.

**FACTUAL BACKGROUND**

The property at issue in this action is a home and two lakefront lots at 324 Bay Street, in the Original Plat of Spring Arbor, located in Boyne City, Charlevoix County, Michigan. As of March 2005, the property was owned by non-parties Michael and Elizabeth Pilobosian; in June 2005, they sold it to defendants Michael and Ann Gabos for $549,000. *See* Am Comp ¶¶ 40 & 49. On July 20, 2005, plaintiffs Alaina M. Zanke-Jodway and Timothy M. Jodway ("together "Jodway") made a $649,000 purchase offer to Gabos; the sale closed on August 3, 2005. Am Comp ¶¶ 1-3, 26, and 50.

Defendant Fifth Third Bank - Michigan, LLC provided financing for the June 2005 Gabos purchase and the Jodway purchase less than two months later. For both transactions, Fifth Third commissioned and relied on appraisals done by defendant Deborah Spence, a licensed Michigan residential real-estate appraiser, through her company A.C.E. Am Comp ¶¶ 27, 29-30, and 52-53.

The August 3, 2005 Warranty Deed ("the deed") states that the property includes three lots. *Id.* ¶3. Block 4 - Lot 14 is a corner lot which contains their house; the front of the house faces Bay Street, and the side of the house faces Addis Street. *Id.* ¶ 4. Block 1 - Lots 1 and 2 have a steep slope and a bluff, with 23 cement steps leading to a more-gently sloped flat area, and then a boulder ("rip rock") seawall which ranges from five to eight feet high in front of their beachfront. *Id.* ¶¶ 4-5.

Next to Lot 14 (Jodway's house) is an unimproved small triangular lot owned by defendant City of Boyne City ("Boyne City"), a municipal corporation. Am Comp ¶¶ 9-10. During the relevant time period, Boyne City employed these defendants: Mayor/Commissioner Stackus; Commissioners Grunch, Adkison, and Douglas; Public Works Director Jason; City Manager Cain; and Water Department Director Meads. Am Comp ¶¶ 11-19.

Next-door and down-slope from the Jodway property is 320 Bay Street (owned by

defendants James J. Luyckx and Carolyn S. Luyckx, together "Luyckx"), which experienced stair washout from water run-off directed down their driveway. *Id.* ¶¶ 35 and 45. Next-door to and down-slope from that is 318 Bay Street (owned by defendants Clarke, Betty Jane, and Lynn Haire), which had a private drain from Bay Street through their property into Lake Charlevoix. *Id.* ¶¶ 37 and 46-47.

Although Jodway did not own the property until August 2005, the relevant events began about five months earlier, when defendant City of Boyne City ("the City") searched for a contractor to provide engineering design services and supervise the reconstruction of Bay Street. Am Comp ¶ 40. , prepared Capital's proposal. Am Comp ¶¶ 19-21. On March 2, 2005, defendant Capital Consultants, Inc., submitted a proposal to The City which was prepared by defendants James M. Fox and James E. Hirschenberger, Capital employees who were licensed by the State of Michigan as professional engineers. Capital's Bay Street proposal read, in pertinent part:

> The reconstruction of Bay Street from John Street to Addis Street, a length of approximately 600 feet. The improvements will include the reconstruction of the existing seal coat roadway with new HMA pavement, drainage and culvert improvements, [and] sanitary sewer and water main replacement. The sanitary sewer will be replaced on John Street from Michigan Avenue to Bay Street.
>
> The existing roadway is approximately 16 feet wide and the new roadway will likely be replaced at the same width and location. *Although the City has 66 feet of right of way, in this area, some of it is not usable due to the location of the bluff to the lake, and a portion of the existing road may not be in the right of way.* Existing drains to the lake will be utilized where possible. It is not anticipated that new storm outlets to the lake will be included as part of the project.

Defs' MSJ (Doc. No. 58), Ex A at unnumbered page 3 (paragraph break added, emphasis added).

On March 28, 2005, Boyne City entered into a contract with Capital for engineering services for the City's fiscal year 2006 construction projects, *see* TCE's MTD, Ex 1 ("Engineering Contract"). The contract hired Capital to perform Design Phase Services, Bidding Phase Services,

and Construction Phase Services.

Sometime shortly thereafter, Boyne City executed a contract hiring TCE to perform construction work; Capital was also a party to the contract. *See* TCE's MTD, Ex 2 ("Construction Contract"). The Boyne City-TCE-Capital contract was subject to the standard general conditions of construction contracts prepared by the Engineer's Joint Contract Documents Committee ("EJCDC") No. 1910-8 (1996 edition), *see* TCE's MTD at 2. Construction contractor TCE emphasizes that the contract called for the Owner (Boyne City) to furnish lands and the site, as well as engineering surveys to establish "reference points" for construction, *see* TCE's MTD at 2 (citing Ex 2, Art. 4.01 at GC-11 and Art. 4.05 at GC-13). The construction contract contained three major sections: Division 1's General Requirements, Division 2's Site Work (covering excavation, backfilling, aggregate courses, curbs and gutters, sidewalks, driveways, water mains, catch basins, storm sewers, and restoration), and Division 3's Concrete. *See* TCE's MTD Ex 2.

Boyne City and Capital Consultants (the engineers) prepared a Bid Agreement, as well, which all bidding contractors, including TCE, were required to follow. Boyne and Capital's Bid Agreement referred to "Contract Documents", which included the Construction Contract and its accompanying specifications and drawings, such as specifications for the size and quantity of materials and the size of all pipes. *See* TCE's MTD, Ex 3 (Bid Agreement) at A-2 to A-4 and A-6. Construction contractor TCE emphasizes that all the "Division Construction Contract work" it performed was based on the technical specifications, drawings, surveys and environmental-permit applications provided by Capital under the Engineering Contract.. *See* TCE's MTD at 3 (citing Ex 1 at 12-13 ¶¶ F, G and J).

According to Jodway, the "existing drains" referred to in Capital's engineering Proposal to

Boyne City were (1) a drainage pipe that ran from a Bay Street catch basin, through the Haires'
lakefront property, whose property is "two doors down" from Jodway, and (2) a private catch basin
and drain installed by the prior owner of the Jodway property to prevent water run-off from eroding
the soil and slop beneath the cement steps of lakefront lots 1 and 2 of the Jodway property. *See* Am
Comp ¶ 43.

On April 25, 2005, Boyne City held a Bay Street construction "kick-off meeting", where its
Public Works Director discussed the following issues with Capital and its engineers, Fox and
Hirschenberger: (1) existing drainage pipes were inadequate; (2) the City had no right-of-way over
the Jodway property for laying water pipes and a fire hydrant; (3) the City had no "flowage"
easement over Jodway Lots 1 and 2 to allow run-off and storm water to drain into Lake Charlevoix;
and (4) the project might require "grading" permits. Am Comp ¶¶ 43-44.

At a meeting on July 21, 2005 – the day after Jodway made a purchase offer to Gabos –
Boyne City, Jason and/or Meads directed Capital to design and install a new catch basin and connect
it to the existing catch basin on Jodway Lots 1 and 2, in order to drain neighborhood run-off and
storm water from Bay Street over the Jodway property and into the lake. Am Comp ¶ 51.

On August 3, 2005 – the day the Gabos sale to Jodway closed – Capital asked Boyne City
to advertise and solicit excavation contractor bids for the Bay Street reconstruction project. Am
Comp ¶ 54. On August 8, Capital (the engineers) reported that it was completing permit
applications and was prepared to publish advertisements soliciting construction bids from
contractors, based on its design for Bay Street and Lake Street. *See* TCE's MTD, Ex 5.

On August 17 – two weeks after Jodway took possession – Boyne City and Capital applied
to the Michigan Department of Environmental Quality ("DEQ") for a permit to lay water pipes and

a fire hydrant through Jodway's Lot 14 (the corner lot, where their house was located), even though they allegedly knew that the proposed location was not within a valid right of way, *id.* ¶¶ 55-56. Boyne City Water Superintendent Dan Meads certified "that the project was reviewed and approved as detailed in plans and specifications submitted under the application." *See* TCE's MTD at 3 (citing Am Comp ¶ 55). Meads further certified that the MDEQ application was in compliance with the requirements of 1976 PA 399 as amended and its administrative rules. *See* TCE's MTD at 3 (citing Ex 4).

On August 30, 2005, Boyne City held a Special Commissioners Meeting where Mayor Stackus and Commissioners Grunch, Adkison, and Douglas voted to proceed with the Bay Street reconstruction (as recommended by Jason and Cain). Jodway alleges that they knew that Capital's design would encroach on their property rights in three respects: (1) run-off and storm water, a "non-point" source of pollution, would be directed through Jodway's lakefront lots and discharged into the lake; (2) the grade and topography of Bay and Addis Streets would be changed to form a bowl to collect run-off and storm water diverted from Luyckx and Haire to the Jodway property; and (3) the proposed location of the water pipes and fire hydrant was outside a platted right of way and encroached on Jodway Lot 14. They rejected Commissioner Vondra's motion to give notice to Jodway before proceeding. *Id.* On September 2, 2005, City Public Works Director Jason notified all Bay Street residents *except Jodway* that the project would begin soon. *Id.* ¶¶ 57-58 and 62-63.

Over two years later, as the alleged effects of the Bay/Lake Street reconstruction project became apparent, the Jodways sent a complaint and demand letter to defendants Capital (the engineers) and TCE partner Philip Vandermus on December 10, 2007. The letter charged as follows:

Collectively, you knowingly interfered and encroached on our property, to wit:

- Lowering the grade of Bay Street and Addis surrounding our property thereby altering the natural flow of water run-off (to my amazement down slope water now flows up slope);

- Installing a second storm water catch basin into part of an abandoned right of way that reverts back to the property owner and connecting it to an existing basin that is within the boundary lines of our property without permission and

- Installing a new 8" water line and fire hydrant within the boundary lines of our property without permission.

* * *

Your company knew the City of Boyne City did not have a drainage easement through our lakefront property to Lake Charlevoix, but chose to trespass and devalue our lakefront property . . . .

Comp Ex BB (same as TCE's MTD Ex 6).

## PROCEDURAL HISTORY

In September 2008, Jodway filed the original complaint in the Circuit Court of Charlevoix County, Michigan, and the Boyne City defendants jointly effected timely, proper removal to this court in October 2008. In December 2008 the plaintiffs filed their first amended complaint, and the defendants filed answers and affirmative defenses in December 2008 and January 2009.

In October 2009, the court granted in part and denied in part the Capital Defendants' motion to dismiss or for summary judgment. *See Zanke-Jodway v. Boyne City et al.*, No. 08-cv-930, 2009 WL 3205969 (W.D. Mich. Sept. 29, 2009) (Maloney, C.J.) ("*Zanke 1*"). The decision eliminated one of the plaintiffs' seven claims against the Capital defendants. The court determined that:

(1)  plaintiffs have standing to bring the environmental statutory claims in counts 7-9, and the statutes invoked in those counts permit private-citizen suits, but only for declaratory and equitable relief, not damages, fines, attorneys fees and costs, etc., *see Zanke 1*, 2009 WL 3205969 at *14-19;

(2)     The Michigan Supreme Court's *Fultz* tort/contract doctrine forecloses count 14 (negligence) as to Capital, but they presented no authority for applying *Fultz* to foreclose counts 7-9 (enforcement of state environmental-protection statutes), count 10 (statutory nuisance *per se* based on violation of a city stormwater ordinance), or count 11 (statutory trespass), *see Zanke 1*, 2009 WL 3205969 at *20-35; and

(3)     even if plaintiffs seem to have made out a *prima facie* case on the environmental statutory claims in counts 7-9 as to Capital which those defendants thus far have not yet persuasively rebutted, summary judgment would be premature before completion of discovery, *see Zanke 1*, 2009 WL 3205969 at *38.

In February 2010, this court ordered the plaintiffs to show cause why part or all of their case should not be dismissed due to their prolonged, widespread failure to prosecute, as evinced by their failure to respond to about half a dozen timely-filed dispositive motions, failure to request more time for discovery pursuant to FED. R. CIV. P. 56(f), and failure even to seek a further extension of time in which to do any of the foregoing (even months after the motion response deadlines passed). *See Zanke-Jodway*, No. 1:2008-cv-930, 2010 WL 520697 (W.D. Mich. Feb. 5, 2010) (Maloney, C.J.). The plaintiffs filed a detailed and emotionally compelling response to the order, but they failed to show cause for the extent and duration of their failure to prosecute their case against those moving defendants. Accordingly, earlier this month, this court dismissed plaintiffs' claims against eighteen defendants with prejudice, pursuant to FED. R. CIV. P. 41, for lack of prosecution:

–     The City of Boyne City, Eleanor Stackus, Ronald Grunch, Dan Adkison, Jerry Douglas, Dennis Jason, Michael Cain, and Dan Meads.
–     Michael E. Gabos and Ann Gabos;
–     Fifth Third Mortgage-Michigan, LLC
–     Deborah A. Spence and Deborah A. Spence d/b/a A.C.E. Appraisal
–     James J. Luyckx and Carolyn S. Luyckx
–     Clarke R. Haire, Betty Jane Haire, and Lynn J. Haire

*See Zanke-Jodway v. Boyne City et al.*, No. 08-cv-930, Doc. ____, 2010 WL ____ (W.D. Mich. Mar. 3, 2010) (Maloney, C.J.) ("*Zanke 3*"). That resulted in the dismissal with prejudice of the following claims, which were <u>not</u> asserted against the TCE Defendants or Capital Defendants:

| Count 1 | 42 U.S.C. § 1983 Civil Rights (Boyne City Defendants) |
| Count 2 | Michigan Constitution, Contract Clause (Boyne City Defendants) |
| Count 3 | Michigan Constitution, Procedural Due Process (Boyne City Defendants) |
| Count 4 | Michigan Constitution, Substantive Due Process (Boyne City Defendants) |
| Count 5 | Michigan Constitution, Equal Protection (Boyne City Defendants) |
| Count 6 | Inverse Condemnation / *De Facto* Taking (Boyne City Defendants) |
| | |
| Count 12 | Ejectment (Boyne City alone) |
| Count 13 | Declaratory Judgment to Quiet Title (Boyne City alone) |
| | |
| Count 15 | Breach of Contract / Warranty Deed Covenants - Rescission (Gaboses) |
| Count 16 | Breach of Contract / Warranty Deed Covenants - Damages (Gaboses) |
| Count 17 | Fraud in the Inducement - Rescission (Gaboses) |
| Count 18 | Fraud in the Inducement - Damages (Gaboses) |
| Count 19 | Fraudulent Misrepresentation (Gaboses) |
| Count 20 | Negligent Misrepresentation (Gaboses) |
| | |
| Count 21 | Fraudulent Misrepresentation, Fraudulent Inducement, and Violation of the Michigan Consumer Mortgage Act by Use of an Inflated Appraisal (Spence, Spence d/b/a Ace Appraisal, and Fifth Third Bank) |
| Count 22 | Rescission of Mortgage Loan (Fifth Third Bank alone) |
| Count 23 | Negligent Misrepresentation and Fraudulent Inducement and "Violations of the Consumer Mortgage Loan" (Spence, Spence d/b/a Ace Appraisal, and Fifth Third Bank) |
| Count 24 | Negligence by Breach of Statutory Duty / USAP Professional Standards (Spence, Spence d/b/a Ace Appraisal, and Fifth Third Bank) |

*See* Am Comp at 2-4.

**THE INSTANT DISPOSITIVE MOTIONS**

The only motions pending at this time are the cross-motions for summary judgment filed by plaintiffs and the three TriCounty Defendants (Ben Sackrider, Philip Van Dermus, and Ben Sackrider and Philip Van Dermus d/b/a Tri-County Excavating, collectively "TCE"). Although denominated as a motion for summary judgment, the TCE motion actually has two components: a FED. R. CIV. P. 12(b)(6) motion to dismiss all tort claims for failure to state a claim on which relief can be granted against TCE, and a FED. R. CIV. P. 56 motion for summary judgment. Oral argument

was scheduled, but the court finds that it is not necessary at this time.

## LEGAL STANDARD:  FAILURE TO STATE CLAIM

This court assesses a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted under the same standard as a Rule 12(c) motion for judgment on the pleadings. *See Fritz v. Charter Twp. of Comstock*, 592 F.2d 718, 722 (6th Cir. 2010) (citing, *inter alia*, *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)); *see also Griffin v. Reznick*, 2008 WL 4741738, *2 (W.D. Mich. Oct. 28, 2008) (Maloney, C.J.) (citing, *inter alia*, *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007)).

Such motions turn on legal issues, not an assessment of the evidence.  *Griffin*, 2008 WL 4741738 at *2 (citing *Technology Recycling Corp. v. City of Taylor*, 186 F. App'x 624, 640 n.5 (6th Cir. 2006) (Griffin, J.) ("*Tech Rec*") and *Thomas v. Arn*, 474 U.S. 140, 150 n.8 (1985) ("[M]otions for judgment on the pleadings and dismissal for failure to state a claim on which relief can be granted . . . consist exclusively of issues of law.")).  A Rule 12(c) motion is simply one permissible avenue for contending that the complaint should be dismissed because it fails to state a claim on which relief can be granted.  *See Griffin*, 2008 WL 4741738 at *2 (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 507 (2006) ("a defense of failure to state a claim upon which can be granted . . . may be made in any pleading . . . or by motion for judgment on the pleadings, or at the trial . . . .") (quoting FED. R. CIV. P. 12(h)(6))).

"Such motions 'presume as a legal matter the lack of any need for an evidentiary hearing . . .'" *Griffin*, 2008 WL 4741738 at *3 (citing *US v. Raddatz*, 447 U.S. 667, 693-94 (1980)).  The court must accept all of the complaint's factual allegations as true and construe the complaint in the

light most favorable to the plaintiff.  *Tech Rec*, 186 F. App'x at 640 n.5 (citing *PONI, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005)); *see also Bohanan v. Bridgestone/Firestone No. Am. Tire, LLC*, 260 F. App'x 905, 906 (6th Cir. 2008) (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)); *Heggie v. Kuzma*, 2009 WL 594908, *9 (W.D. Mich. Mar. 6, 2009) (Maloney, C.J.) ("the court must accept as true all Plaintiff's allegations and construe the complaint liberally in his favor") (citing *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000)).  But the court need not draw unwarranted factual inferences or accept the plaintiff's *legal* conclusions. *Bohanan*, 260 F. App'x at 906 (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

And each claim's factual allegations must *plausibly* suggest a viable claim; the claim must be plausible and not merely conceivable.  *Griffin*, 2008 WL 4741738 at *3 (citing *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 455 (6th Cir. 2007) (en banc) (Sutton, J., joined by Griffin et al.) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,  –, 127 S.Ct. 1955, 1974 (2007))).  "The 'factual allegations must be enough to raise a right to relief above the speculative level'", not merely create a "'*suspicion* of a legally cognizable cause of action . . . .'" *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Twombley*, 550 U.S. at –, 127 S.Ct. at 1974) (internal alterations omitted)).[1]  There must be either direct of inferential allegations regarding all the material

---

[1]

Until 2007, our Circuit followed the standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which directed courts to grant a 12(b)(6) motion "when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Taylor v. Sampson*, 2008 WL 2923435, *2 n.3 (W.D. Mich. July 25, 2008) (Maloney, J.).

In *Twombley* (2007), the Court "retired the 'no set of facts' formulation of the Rule 12(b)(6) standard and dismissed a . . . complaint because it did not contain facts sufficient to 'state a claim to relief that is plausible on its face.'" *Griffin*, 2008 WL 4741738 at *3 n.1 (quoting *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 337 n.4 (6th Cir. 2007) (quoting *Twombley*, 550 U.S. at –, 127 S.Ct. at 1974)).  *See also Casden v. Burns*, 306 F. App'x 966, – n.5 (6th Cir. 2009).

elements of each claim. *LULAC v. Bredesen*, 500 F.2d 523, 527 (6th Cir. 2007) (McKeague, J.) (citing *Twombley*, 550 U.S. at –, 127 S.Ct. at 1969).

Our Circuit cautions that district courts should not overstate the hurdle that *Twombley* establishes for plaintiffs to survive a Rule 12(b)(6) or Rule 12(c) motion:

> In *Erickson v. Pardus*, 550 U.S. [89], 127 S.Ct. 2197 . . . (2007) [(p.c.)], decided two weeks after *Twombley*, however, the Supreme Court affirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 2200 (quoting *Twombley*, 127 S.Ct. at 1964).
>
> The opinion in *Erickson* reiterated that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id.* (citing *Twombley*, 127 S.Ct. at 1965). We read the *Twombley* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12.

*Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 550 (6th Cir. 2008) (Griffin, J.) (quoting *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir. 2008) (fn. omitted, ¶ break added)) (other internal quotation marks & alterations omitted). Nonetheless, "[w]hile a complaint need not contain detailed allegations, [it] must include more than mere labels and conclusions." *Petros v. Sampson*, 2009 WL 2761425, *2 (W.D. Mich. Feb. 4, 2009) (Edgar, J.) (citing, *inter alia*, *Twombley*, 550 U.S. at –, 127 S.Ct. at 1965).

Ultimately, ""a claim has facial plausibility when the party seeking relief 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *US v. Washington State DOT*, – F. Supp.2d –, –, 2009 WL 2985474, *3

---

"In some cases, *Twombley* may make it easier . . . to grant 12(b)(6) than the *Conley* standard." *Taylor*, 2008 WL 2923435 at *2 n.3.

(W.D. Wash. Sept. 15, 2009) (quoting *Ashcroft v. Iqbal*, – U.S. –, –, 129 S.Ct. 1937, 1949 (2009) (J. Kennedy for the Court, joined by C.J. Roberts, and JJ. Scalia, Thomas, and Alito)).

When considering whether to grant a Rule 12(c) or 12(b)(6) motion, the court primarily considers the complaint's allegations, but may also take into account items appearing in the record and attached exhibits. *Poly-Flex Const., Inc. v. NTH, Ltd.*, 582 F. Supp. 892, 901 (W.D. Mich. 2008) (Maloney, C.J.) (citing, *inter alia*, *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001)). The court may also consider, without converting the 12(b)(6) motion into a motion for summary judgment, "matters of public record (e.g. pleadings, orders and other papers on file in another action pending in the court; records or reports of administrative bodies; or the legislative history of laws, rules or ordinances) as long as the facts noticed are not subject to reasonable dispute." *Pakootas v. Teck Cominco Metals, Ltd.*, 632 F. Supp.2d 1029, 1032 (E.D. Wash. 2009) (citing *Intra-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007)); *accord River Village West, LLC v. Peoples Gas Light & Coke Co.*, 618 F. Supp.2d 847, 850 (N.D. Ill. 2008) (on Rule 12(c) or 12(b)(6) motion, "the court may take judicial notice on matters of public record") (citing *US v. Wood*, 925 F.2d 1580, 1581-82 (7th Cir. 1981)).

**DISCUSSION:**
**Rule 12(b)(6) Motion to Dismiss Counts 7-9, 10, 11 and 14 Against TCE**

The amended complaint asserts seven claims against TCE – counts 7-9, 10, 11, 14 and 25 – and only one (negligence) will be eliminated by the TCE Defendants' 12(b)(6) motion based on the Michigan Supreme Court's *Fultz* contract/tort doctrine. One more claim against TCE (intentional infliction of emotional distress) will be dismissed on a non-*Fultz* ground for failure to state a claim on which relief can be granted.

-14-

**First, the court perceives no reason to depart from the holdings of *Zanke 1*,** 2009 WL 3205969, \*10-19, that the environmental statutes in counts 7-9 authorize private-citizen enforcement suits, but permit private citizens to obtain only declaratory and equitable relief, not any other type of relief. That obligates the court to dismiss the plaintiffs' claims for any other type of relief on counts 7-9 (e.g., compensatory damages, punitive damages, fines or penalties to the State of Michigan, attorneys fees and costs) from TCE.

**Second, for the reasons stated in *Zanke 1*,** 2009 WL 3205969, \*24-35,[2] the court holds that the Michigan Supreme Court's *Fultz* doctrine requires dismissal of the common-law negligence claim against TCE (Count 14) as a matter of law as well, because it does not allege a duty running from TCE to the plaintiffs which is sufficiently separate and distinct from TCE's contractual duties. *Accord Keller Const., Inc. v. U.P. Engineers & Architects, Inc.*, 2008 WL 2665113, \*3-4 (Mich. App. July 8, 2008) (per curiam) (P.J. Owens, Meter, Schuette) (applying *Fultz* to dismiss construction contractor's claims against engineering firm for negligence, professional malpractice, and tortious interference with advantageous business relationship or expectancy), *app. denied*, 482 Mich. 1068, 757 N.W.2d 500 (Mich. 2008).

**Third, in *Zanke 1*,** 2009 WL 3205969 at \*24-35, this court held that *Fultz* did <u>not</u> require dismissal for failure to state a claim of five other claims against the Capital Consultant Defendants: Counts 7-9 (statutory environmental claims), Count 10 (Nuisance Per Se, MICH. COMP. LAWS § 125.3407), and Count 11 (Statutory Trespass, MICH. COMP. LAWS § 600.2919). The court perceives no authority or reason to deviate from this holding with regard to the same statutory environmental

---

[2]*Zanke 1*'s reasoning on these issues has not been undermined by any precedential Michigan state-court decisions issued in the five and a half months since it was decided.

claims (counts 7-9) against TCE, so TCE's motion to dismiss those three claims under the *Fultz* doctrine for failure to state a claim, will be denied.

With regard to the nuisance *per se* and statutory trespass claims against TCE, however, *Zanke 1*'s reasoning is inapposite. The court will accordingly grant TCE's motion to dismiss those claims (counts 10 and 11) under *Fultz* for the reasons described below.

First, TCE cites *Keller Const., Inc. v. U.P. Engineers & Architects, Inc.*, 2008 WL 2665113 (Mich. App. July 8, 2008) for its assertion that *Fultz* requires dismissal not just of the negligence claim but also of the statutory-trespass and nuisance *per se* claims. TC, however, provides no analysis or reasoning whatsoever to convince the court that *Keller* requires such a result. TCE merely states, "the same analysis [which *Keller* applied to negligence, malpractice, and tortious-interference claims] is applicable to the tort claims for trespass and nuisance based on *Fultz, supra*", TCE's Opp at 9, and moves on to another unpublished Michigan Court of Appeals decision. Such a conclusory assertion adds little.

TCE has a stronger argument with the second decision on which it relies on for its *Fultz* attack on the plaintiffs' tort claims: *Matrix Const., LLC v. Barton Malow*, 2006 WL 399762 (Mich. App. Feb. 21, 2006) (per curiam) (P.J. Murray, Cavanagh, Saad). *Matrix* did not involve claims for statutory trespass or nuisance, but its reasoning is sound and instructive. Via two separate contracts, Schoolcraft College hired plaintiff Matrix Construction to construct a building at its campus in Livonia, Michigan, and hired defendant Barton Malow Company to serve as construction manager for that same project. *See Matrix*, 2006 WL 399762 at *1. Matrix Construction sued Malow, claiming that Malow "negligently managed the project by failing 'to properly supervise, coordinate, plan and schedule the work performed on the [p]roject.' According to Matrix, Barton Malow's

negligent supervision delayed completion of the project and caused Matrix to incur additional costs."

*Id.* (bracketed alteration in original). The *Matrix Contruction* panel affirmed the dismissal for failure to state a claim of the construction contractor's negligent-supervision claim against the project manager, stating as follows:

> It is undisputed that there is no contract between Matrix and Barton Malow that would give rise to a duty on the basis of a contractual relationship. Rather, Matrix asserts that, as the construction manager, Barton Malow owed Matrix and other contractors a common-law duty to properly supervise and control the project.
>
> To support its position, Matrix primarily relies on *Bacco Construction Co. v. American Colloid Co.*, 148 Mich. App. 397,384 N.W.2d 427 (1996), *abrogated on other grounds [by] Nat'l Sand, Inc. v. Nagel Const., Inc.*, 182 Mich. App. 327, 451 N.W.2d 618 (1990).
>
> In *Bacco*, the general contractor (Bacco), entered a contract with Houghton County to construct waste[-]water lagoons. *Id.* at 402. Barton sued the project engineer . . . (MPS), for negligence because MPS changed the specifications of the contract and directed Bacco to use a different sealant for construction of the lagoons. *Id.* Bacco used the sealant specified by MPS, and, after testing, the seal did not meet contract specifications standards and a major leak developed. *Id.* at 402-403. The County rejected Bacco's work and Bacco incurred expenses to correct the problem. *Id.* at 403. Bacco's complaint specifically alleged that MPS breached a duty "to use reasonable care in the selection, testing and approval of materials, as well as the selection, approval and supervision of the methods [by which] and manner in which the materials were installed." *Id.* at 413.
>
> The trial court dismissed Bacco's negligence claim because it ruled that MPS did not owe Bacco a legal duty. *Id.* at 404. In reviewing the issue on appeal, this Court first observed that other jurisdictions have held that a contractor may maintain an action against an engineer or architect in the absence of a direct contractual relationship. *Id.* at 414. With regard to an engineer's duty to a contractor, the *Bacco* court noted that "[i]t is certainly foreseeable that an engineer's failure to make proper calculations and specifications for a construction job may create a risk of harm to the third-party contractor who is responsible for applying those specifications to the job itself. *Id.* at 416.
>
> The Court also relied on cases from other states in which engineers and architects were held liable in tort and it adopted the reasoning in *Donnelly Construction Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 677 P.2d 1291 (1984). *Id.* at 416. The *Bacco* court explained:

> In *Donnelly* . . . where a contractor brought suit against architects
> alleging that errors in plans and specifications prepared by the
> architects resulted in increased cost of construction, the court held
> that the contractor had stated a cause of action for negligence, since
> it was foreseeable that the contractor, hired to follow the plans, would
> incur increased costs if these plans were not accurate, in spite of the
> lack of privity of contract. The [Arizona Supreme C]ourt held that
> design professionals are liable for foreseeable injuries to foreseeable
> victims which proximately result from negligent performance of their
> contractual duties. [*Id.*]
>
> Accordingly, the [Michigan Court of Appeals] ruled that Bacco stated a valid
> negligence claim against MPS because, as an engineer, MPS owed a duty of due care
> to Bacco with regard to its material calculations and specifications. *Id.* at 416.
>
> We hold that *Bacco* [Mich. App.] is inapplicable because, here, [construction
> contractor] Matrix admits that [project manager] Barton Malow merely acted as the
> construction manager for the project, not a 'design professional' that disseminates
> plan specifications. Further, Matrix does not allege that Barton Malow undertook
> any duties separate and distinct from Barton Malow's contract with Schoolcraft.
> Indeed, Matrix's allegations relate to Barton Malow's duty to properly perform its
> work in accordance with the terms and conditions of its contract with Schoolcraft.

*Matrix*, 2006 WL 399762 at *2-3 (parallel citations omitted, some ¶ breaks added).

The court recognizes that as unpublished decision, *Matrix Construction* lacks precedential

force under Michigan rules, *see Nucolovic v. Hill*, – N.W.2d –, 2010 WL 21067, *___, – Mich. App.

– (Mich. App. Jan. 5, 2010) (citing Mich. Ct. R. 7.215(C)(1) and *Marilyn Froling Revocable Living*

*Trust v. Bloomfield Hills Country Club*, 283 Mich. App. 264, 282-83, 769 N.W.2d 234 (Mich. App.

2009)). The court finds, however, that the *Matrix* panel's reasoning is sound, and not inconsistent

with any published Michigan precedent of which the court is aware. Just as the project manager in

*Matrix* was not involved in the design of the construction project and thus could not be held liable

in tort for merely performing its contractual role, here the TCE defendants were not involved in the

permit applications, boundaries, design, or specifications of the Bay Street reconstruction project

and cannot be held liable in tort merely for faithfully performing its contractual duty of

implementing a design which was created solely by others: the employer (the City of Boyne City) and the design professionals (Capital Consultants).

The Jodways contend that TCE should have known that Capital Consultants' designs and instructions would result in encroachments on the Jodways' property, or should have been suspicious enough to investigate whether that was the case. Without citation to even persuasive authority, the Jodways assert as follows:

> The fact that Defendant [TCE] had a contract for others to obtain easements or permits cannot be relied upon by Defendants and does not provide a defense. Defendants did not have a permit for extending the new catch basin with a 12" pipe ('artificial channel') to the existing catch basin for enlarged drainage required by MCL 324.30102. Defendants knew or should have known [that] the City did not have an easement to drain storm water over and through Jodways' property. Defendants knew or should have known [that the City] did not have an easement to place water supply pipes and a fire hydrant on Jodways' private property.

P's MSJ at 16-17. But they present no Michigan statute, regulation, or case law imposing a duty on a mere construction contractor to second-guess the environmental permitting, engineering specifications, land-boundary and easement determinations, and the like presented to the contractor by a professional engineering firm which alone was contractually assigned those tasks. Nor is the court aware of any Michigan precedent effectively prohibiting a construction company from relying on the expertise, license, and contractual responsibility of such a specialized firm. Indeed, such a rule could lead to chaos – complicating, delaying, and perhaps significantly increasing the cost of construction projects as every construction contractor and subcontractor felt compelled to undertake its own independent analysis of matters which both contract (and, implicitly, state licensure) expressly assign to others.

Thus, on the cogent persuasive authority of *Matrix Const., LLC v. Malow*, 2006 WL 399762 (Mich. App. Feb. 21, 2006), the court holds that the Michigan Supreme Court would affirm the *Fultz*

dismissal of the Jodways' statutory trespass and nuisance claims (counts 10 and 11) against construction contractor TCE for failure to state a claim on which relief can be granted.

**The IIED claim (count 25) as to TCE must be dismissed for failure to state a claim, independent of the *Fultz* doctrine.** Even accepting all the well-pled factual allegations of the complaint as true for purposes of TCE's motion to dismiss, *see Fritz*, 592 F.2d at 722, it makes no allegation of any specific conduct by TCE, Vandermus or Sackrider whatsoever which might satisfy the elements of IIED. Rather, Count 25 makes conclusory statements pertaining to the elements of IIED, without tying those elements to any TCE conduct previously alleged. Count 25 reads as follows, in its entirety:

336. The Jodways restate their prior allegations as though fully stated herein.

337. The acts of Defendants - Boyne City, Stackus, Grunch, Adkinson, Douglas, Jason, Meads, Cain, Capital, Fox, Hirschenberger, Tri-County, Sackrider, Vandermus, Gabos, Spence and Fifth Third's conduct was extreme, outrageous, illegal, and of such character as not to be tolerated by a civilized society.

338. Defendants - Boyne City, Stackus, Grunch, Adkinson, Douglas, Jason, Meads, Cain, Capital, Fox, Hirschenberger, Tri-County, Sackrider, Vandermus, Gabos, Spence and Fifth Third's conduct was intentional and done in disregard to the health hazards pose to Jodways and risk of catastrophic financial losses to Jodways.

339. Defendants - Boyne City, Stackus, Grunch, Adkinson, Douglas, Jason, Meads, Cain, Capital, Fox, Hirschenberger, Tri-County, Sackrider, Vandermus, Gabos, Spence and Fifth Third's conduct as described herein was done with an ulterior motive or purpose to defraud.

340. Defendants - Boyne City, Stackus, Grunch, Adkinson, Douglas, Jason, Meads, Cain, Capital, Fox, Hirschenberger, Tri-County, Sackrider, Vandermus, Gabos, Spence and Fifth Third's conduct resulted in severe and serious emotional distress to the Jodways, including loss of sleep, and deterioration of their physical health and well-being.

341. The Jodways have been taunted, harassed, the subject of derogatory remarks,

sworn at, and pointed at by pedestrians and drivers, peering into their home.

342.     On Sunday, June 1, 2008 and Sunday, June 8, 2008, the Jodways came home to discover Defendant-Commissioner Grunch hovering around their property.

343.     The Jodways have been harassed by Defendant-Boyne City DPW Director, Michael Weisner's repeated drive-bys and continued presence without having a legitimate business purpose.

344.     The Jodways' for their child's safety as a green [S]uburban [automobile] with 4 adult passengers made repeated very slow passes, pointing at our child, her caregiver and 2 other children on Jodways' Lots 1 and 2, between 2:45 pm and 5:00 pm August 13, 2008 while the Jodways were at work.

345.     As a direct and proximate result of Defendants - Boyne City, Stackus, Grunch, Adkinson, Douglas, Jason, Meads, Cain, Capital, Fox, Hirschenberger, Tri-County, Sackrider, Vandermus, Gabos, Spence and Fifth Third's conduct, the Jodways have been damaged in the manner described above.

346.     **WHEREFORE PLAINTIFFS . . .** request that this court enter judgment in their favor against Defendants - Boyne City, Stackus, Grunch, Adkinson, Douglas, Jason, Meads, Cain, Capital, Fox, Hirschenberger, Tri-County, Sackrider, Vandermus, Gabos, Spence and Fifth Third's [sic] . . . .

Am Comp ¶¶ 336-346.  These paragraphs of the complaint, or any earlier paragraphs which they incorporate by reference, state a claim on which relief can be granted against TCE for *intentional* IED under Michigan law.


### CROSS-MOTIONS FOR SUMMARY JUDGMENT ARE PREMATURE

As to the three claims against TCE which the court has not dismissed under Fed. R. Civ. P. 12(b)(6) – the statutory environmental claims in counts 7-9 – the court will deny without prejudice the cross-motions for summary judgment in order to afford the parties an opportunity for thorough discovery.  In early summer 2009, the Magistrate Judge stayed all discovery pending the resolution of the flurry of dispositive motions filed by the plaintiffs and the then-twenty-four defendants,

stating that he would hold a Rule 16 conference after all the motions had been addressed.  *See* Doc

103 issued June 23, 2009 by the Hon. Joseph G. Scoville, U.S.M.J.

"In contrast [to a motion to dismiss], a motion for summary judgment may not be granted

until a plaintiff has had an opportunity for discovery."  *Tucker v. Union of Needletrades, Indus. &*

*Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005).  *See also Brown v. US*, – F. App'x –, 2009 WL

4641747, \*1 (6th Cir. Dec. 8, 2009) ("[T]he district court denied the first Motion for Summary

Judgment on the ground that it was premature to strike Dr. Patrick's report and grant summary

judgment, even if Dr. Patrick's report and affidavit were inadequate at that time, as Plaintiffs had

indicated that Dr. Patrick would submit a more detailed report after . . .  additional discovery . . . .");

*Myers v. Potter*, 422 F.3d 347, 358 (6th Cir. 2005) ("[U]nlike the situation in which the defense of

qualified immunity is asserted, there is no analogous necessity for a district court to render an early

decision, prior to a reasonable period for discovery, regarding a municipality's defenses to § 1983.

Accordingly, we think that the district court's summary judgment for Chief Melton on Myers'

failure-to-train claim was premature and that Myers should have been granted more to conduct

discovery with respect to that claim.") (Ryan, J., joined by Cook, with Moore concurring separately).

This principle applies with particular force to this case because the plaintiffs are proceeding

*pro se,* and under the burden of Mrs. Zanke-Jodway's medical condition and their apparently trying

personal circumstances.  They especially should not be required to withstand summary judgment

in such a complex case without the benefit of full discovery.  For these reasons, the court today has

considered only the Rule 12(b)(6) portion of TCE's motion.  *See DeMartino v. Zenk*, 2006 WL

1455456, \*4 (E.D.N.Y. May 25, 2006) ("Defendants have moved to dismiss . . . or, in the

alternative, for summary judgment . . . .  Given that Plaintiff appeared *pro se* until very recently, and

that the record reveals that the parties have not engaged in discovery, the Court declines to treat the instant motion as one for summary judgment. Accordingly, the court is limited to consideration of only . . . ."); *cf. Green v. Fed. Bureau of Prisons*, 2009 WL 150650, *1 (D. Colo. Jan. 11, 2009) ("*Given that Green is proceeding pro se*, this court will not surprise him by converting defendants' motion to dismiss into a motion for summary judgment without allowing Green the opportunity to conduct discovery.") (emphasis added).[3]

## ORDER

The motion to dismiss or for summary judgment filed by defendants  Ben Sackrider, Philip

---

[3]

The TCE defendants (construction contractor and its general partners) ask for leave to amend their answer to assert a cross-claim for contractual and common-law indemnification and contribution against the Capital defendants (project engineers). *See* TCE's Opp at 10 n.6 (citing *Marathon Pipe Line v. Nienhuis*, 31 Mich. App. 407, 188 N.W.2d 120 (Mich. App. 1971); *see also* TCE's Opp at 14-15 (citing Engineering Contract ¶ R and *Nat'l Sand, Inc. v. Nagel Const., Inc.*, 182 Mich. App. 327, 331, N.W.2d (Mich. App.) (P.J. Holbrook, <u>Sawyer</u>, Richard Allen Griffin), *app. denied*, 434 Mich. 1214, 456 N.W.2d 390 (Mich. 1990)).

TCE also cites *Bacco Const. Co. v. Am. Colloid Co.*, 148 Mich. App. 397, 384 N.W.2d 427 (Mich. App. 1986) (P.J. Walsh, Gribbs, <u>Shepherd</u>) as authority for leave to assert such a cross-claim against Capital. The *Bacco* panel held that notwithstanding lack of direct privity of contract between the two, a construction contractor stated a claim on which relief could be granted by claiming that project engineer "breached a duty owed to plaintiff [construction contractor] to use reasonable care in the selection, testing and approval of materials, as well as the selection, approval and supervision of the methods and manner in which the materials were installed." *Bacco*, 148 Mich. App. at 413, 384 N.W.2d at 433. The *Bacco* panel rejected the notion that engineer owed a duty only to its employer, stating:  "it is certainly foreseeable that an engineer's failure to make proper calculations and specifications for a construction job may create a risk of harm to the third-party contractor who is responsible for applying those specifications to the job itself." *Bacco*, 148 Mich. App. at 416, 384 N.W.2d at 434.

If the TCE defendants wish to amend their answer, however, they must file a motion seeking such leave in the ordinary fashion (which includes their prior consultation with Capital's counsel per our Local Civil Rules, and then, if consent is not forthcoming and the motion must be filed, a referral of the motion to the Magistrate Judge for disposition pursuant to 28 U.S.C. § 636(a)(1)(A)).

Van Dermus, and Ben Sackrider and Philip Van Dermus d/b/a Tri-County Excavating (collectively "TCE") [doc. #78] is **GRANTED in part and DENIED without prejudice in part**.

TCE's FED. R. CIV. P. 12(b)(6) motion to dismiss is **GRANTED** as to four claims:
| | |
|---|---|
| Count 10 | Nuisance Per Se in violation of MICH. COMP. LAWS § 125.3407 |
| Count 11 | Trespass in violation of MICH. COMP. LAWS § 600.2919 |
| Count 14 | Negligence |
| Count 25 | Intentional Infliction of Emotional Distress |

TCE's FED. R. CIV. P. 12(b)(6) motion to dismiss is **DENIED** as to three claims:
| | |
|---|---|
| Count 7 | NREPA Part 31, Clean Water Act |
| Count 8 | NREPA Part 91, Soil & Sedimentation Act |
| Count 9 | NREPA Part 301, Inland Lakes and Streams Act |

Counts 10, 11, 14 and 25 are **DISMISSED as to defendants Benjamin Sackrider, Philip Van Dermus, and Benjamin Sackrider and Philip Van Dermus d/b/a Tri-County Excavating**.

Both motions for summary judgment [doc #78 and doc #108] are **DENIED as moot as to counts 10, 11, 14 and 25**.

Both motions for summary judgment [doc #78 and doc #108] are **DENIED without prejudice as premature as to counts 7, 8 and 9.**

This is <u>not</u> a final and immediately-appealable order, because it does not dispose of all claims as to all parties. *See Aslani v. Sparrow Health Sys.*, 010 WL 623673, *9 (W.D. Mich. Feb. 18, 2008) (Maloney, C.J.) (citing, *inter alia*, *Tanner Co. v. US*, 575 F.2d 101, 102 (6th Cir. 1978)).[4]

_____

[4]Against the three Capital Defendants, six claims remain :

Count 7 - NREPA Part 31, Clean Water Act
Count 8 - NREPA Part 91, Soil & Sedimentation Act
Count 9 - NREPA Part 301, Inland Lakes and Streams Act
Count 10 - Nuisance Per Se in violation of MICH. COMP. LAWS § 125.3407
Count 11 - Trespass in violation of MICH. COMP. LAWS § 600.2919
Count 25 - Intentional Infliction of Emotional Distress

Against the three Tri-County Excavating Defendants, three claims remain:

**IT IS SO ORDERED** on this <u>12th</u> day of March 2010.


                                              <u>/s/Paul L. Maloney</u>
                                              Honorable Paul L. Maloney
                                              Chief United States District Judge

---

Count 7 - NREPA Part 31, Clean Water Act
Count 8 - NREPA Part 91, Soil & Sedimentation Act
Count 9 - NREPA Part 301, Inland Lakes and Streams Act

No claims remain against any other defendants.